The CITY OF FAYETTEVILLE, Arkansas, and the Board of Trustees of the University of Arkansas *v.* Sue PHILLIPS, Assessor, and Washington County Board of Equalization

90-311                                        811 S.W.2d 308

Supreme Court of Arkansas
Opinion delivered June 17, 1991

*Ginger P. Crisp, Fred H. Harrison, Jeffrey A. Bell*, and *Jerry E. Rose*, for appellants.

*George E. Butler, Jr.*, for appellees.

TOM WOMACK, Special Justice. This appeal results from a decision of the Washington County Circuit Court that the appellants, the City of Fayetteville and the Board of Trustees of the University of Arkansas, are not entitled to an exemption from ad valorem taxes during the construction of a jointly-owned arts center.

In 1988, the appellants acquired real property in Fayetteville on which they planned to construct the Walton Arts Center. By application to the Washington County Assessor, the City and University sought an exemption from property taxation under article 16, § 5(b), of the Constitution of Arkansas, contending that the site for the Center is public property being used exclusively for public purposes. The appellee county assessor denied the application for exemption on the basis that the property was not currently being used for an exempt purpose, the possibility existed that the Center, when completed, would be available for private functions, and the Center would compete with similar facilities in the area which were not being taxed.

The appellants then applied for relief to the appellee, Washington County Board of Equalization, and the request for exemption was again denied. An appeal was taken by the

appellants to the Washington County Court, which ruled after a hearing that the property was exempt from ad valorem taxation. The appellees then appealed to the circuit court, which found that the property was not exempt, and the appellants now appeal from that decision. Additionally, the appellees have cross-appealed that part of the circuit court's ruling holding that public property can, under some circumstances, be exempt from taxation during a period of construction. We affirm the decision of the trial court and deny the tax exemption to the appellants.

The facts are presented on stipulation of the parties and exhibits. The City and University entered into an Interlocal Cooperation Agreement in 1986 to finance, construct, and manage a center for the arts. Under the agreement, each contributed $4,500,000 for construction and an endowment to operate and maintain the facility. The primary source of the funds for the University's contribution was a private donation from Sam and Helen Walton of Bentonville. The City's contribution consisted of $1,000,000 from its general fund and $3,500,000 from a sales tax capital improvement bond issue backed by the City's portion of county sales tax revenues. The bond issue was approved by Fayetteville voters in October 1986.

A city block was designated as the site for the Walton Arts Center. The property in the north half of the block was purchased in May of 1988 and is the subject of the present appeal. By January 1, 1989, existing buildings on the property had been vacated, and it had been determined that asbestos abatement would be necessary before demolition of the buildings could begin. Asbestos abatement began in January 1989 and was completed in March 1989. Construction of new buildings was delayed pending the outcome of a condemnation suit concerning the property in the south half of the block. Later in the year, that suit was resolved in favor of the City and University, both in chancery court and on appeal to the Arkansas Court of Appeals.

The Center was designed to consist of two buildings, one to contain two classrooms equipped for art education and offices to be used by area non-profit organizations and Center staff, and a second to contain some additional offices, an exhibition gallery for fine arts, crafts and other exhibitions, a main hall equipped for theatrical productions, and a smaller auditorium outfitted for

other arts presentations. A primary consideration in the planning of the Center was the provision of performance space for use by all segments of the public. According to the Center's executive director, any group or individual requesting use of the facility would be allowed to do so upon payment of a designated rental fee. The amount of rental fees were not determined initially, but were to be kept low in order to encourage maximum utilization of the Center. According to the record, no decision had been reached as to whether those groups and persons renting space would be required to open their events to the public, either on a paying or non-paying basis.

The plans called for operating funds to be derived from earnings on the endowment, rental rates, ticket sales, corporate and foundation grants, gifts and bequests, class registration fees, and state and federal grants. The programs to be offered by the Center would complement conferences and educational programs offered by the Continuing Education Center in Fayetteville, although they might attract the same segments of the general public who would otherwise attend arts programs at the Arts Center of the Ozarks, a private, non-profit arts center in the area whose property was not exempt from ad valorem taxation.

This case calls for an interpretation of the property tax exemption provision of our Constitution, article 16, § 5(b), which states:

> The following property shall be exempt from taxation: *public property used exclusively for public purposes*; churches used as such; cemeteries used exclusively as such; school buildings and apparatus; libraries and grounds used exclusively for school purposes; and buildings and grounds and materials used exclusively for public charity.

(Emphasis supplied.)

In its letter opinion and Order, the circuit court, in reviewing the evidence submitted, made the following findings:

> 1.    Property must be "actually and directly and exclusively" used for a public purpose to be entitled to an exemption from taxation.
>
> 2.    The actual type of use to which property may

ultimately be put is determinative as to questions involving entitlement to an exemption during construction. If the type of use contemplated by the entity seeking the exemption is exclusively public, as well as the actual character of the use to which the property can be put, the property will be entitled to tax-exempt status.

3.      If a possibility exists that the property can or will be used for non-public purposes and that issue is raised by the taxing authority, the tax exemption will not be applied prospectively during construction of the facility.

4.      Issues related to the use of the Walton Arts Center after construction are not ripe for a decision by the court.

5.      The defendants have failed to meet the strict burden of proof imposed upon entities seeking an exemption from ad valorem taxation.

The appellants bring this appeal asserting two points for reversal: (1) The circuit court committed error in ruling that public property under construction for a public purpose shall be denied a tax exemption if there exists an issue as to whether the property may be used for a non-public purpose once completed; and (2) The court erred in finding the appellants had failed to meet their burden of proving that the Walton Arts Center was being used exclusively for public purposes on January 1, 1989. On cross-appeal, the appellees urge error in the circuit court's ruling that the property would have been exempted during the construction period had the appellants met their burden of proof.

As this Court has consistently held, taxation is the rule and exemption the exception. Exemptions from taxation must always be strictly construed, regardless of merit, in favor of taxation and against exemption. *Hilger* v. *Harding College*, 231 Ark. 686, 331 S.W.2d 851 (1960); *Off-Street Parking Development Dist. No. 1* v. *City of Fayetteville*, 284 Ark. 453, 683 S.W. 2d 229 (1985). As stated in *Brodie* v. *Fitzgerald*, 57 Ark. 445, 22 S.W. 29 (1893):

[E]xemptions, no matter how meritorious, are acts of grace, and must be strictly construed, and every reasonable intendment must be made that it was not the design to surrender the power of taxation or to exempt any property

from its due proportion of the burden of taxation.

The prior cases underscore the limiting language of the constitutional provision and emphasize the heavy burden on those seeking an exemption. Most recently the Court concurred with this approach in *Arkansas Conf. Ass'n of Seventh Day Adventists, Inc.*, v. *Benton County Bd. of Equalization*, 304 Ark. 95, 800 S.W.2d 426 (1990).

■ Article 16, § 5(b) requires that exempt property be public property and be used for public purposes. *B.D.T. Inc.* v. *Moore*, 260 Ark. 581, 543 S.W.2d 220 (1976). In this case there is no dispute as to the "public property" requirement. The ownership of the tract in question is held in a tenancy in common by two obviously public entities. The issue is whether the property was, at the time in question, "used exclusively for public purposes." In *City of Springdale* v. *Duncan*, 240 Ark. 716, 401 S.W.2d 747 (1966), a city with sewage disposal problems acquired land for use at some undetermined time in the future as a buffer zone for sewage facilities, but had not actually used the lands in this manner, but instead leased them to an individual. A property tax exemption was denied because actual use for a public purpose is required, an expected, intended or contemplated future use not being sufficient to meet the constitutional requirement.

The cases of *Hudgins* v. *Hot Springs*, 168 Ark. 467, 270 S.W. 594 (1925), and *Forsee* v. *Bd. of Directors of Bergman Special School Dist.*, 213 Ark. 569, 211 S.W.2d 432 (1948), cited by appellants, while both permitting exemptions, demonstrate that an existing or prior tax exempt use is required for exemption. In *Hudgins*, land was acquired and used for city landfill purposes, although the use was subsequently discontinued due to lack of road access. Finding that actual use for public purposes had occurred and that there had been no change in use, this court upheld an exemption. In *Forsee*, a public school case, an existing structure had been razed by the school district, which intended to make later use of the property by erecting another school building on the old foundation. The Court found that the actual use of the land for school purposes had not ceased, and that its exemption from taxation should continue. Under *Hilger* v. *Harding College, supra*, which contains a review of the "exclu-

sive use" cases, the principles and rules for exemptions of property used for school purposes, for public purposes, and for charity were declared the same due to the similarity of language employed as to each category in article 16, § 5. Consequently, our decisions in the school cases cited, which turn on actual and direct use, readily apply to the present facts.

Appellants further rely on *Wayland* v. *Snapp*, 232 Ark. 57, 334 S.W.2d 633 (1960), as authority for the proposition that construction by a public entity of a facility to be used for a public purpose is an exclusive public use under the constitutional provision in issue. We do not concur with this contention because *Wayland* v. *Snapp, supra,* concerns an industrial development project facilitated by amendment 49 to the Constitution and Act 9 of the 1960 General Assembly. Both the amendment and the legislative act were intended to facilitate procurement of industry, and the amendment specifically describes such an activity as a public purpose. There is no comparable constitutional or statutory authority indicating that an arts center, prior to its actual operation, will constitute an exclusive public purpose activity.

For ad valorem tax purposes, January 1 of the year in question is the date of determination of property value and right to the exemption. Ark. Code Ann. § 26-26-1201 (1987). On the tax assessment date in the present case, January 1, 1989, the construction of an arts center was proposed, some work had begun in preparation for the removal of existing buildings from the site, but new construction had not commenced. While the record reflects an intent to use the land for the stated purposes, which were stipulated to be generally of a public nature, there had been no actual nor exclusive public use as mandated by the Constitution on the date in question. As correctly stated by the court below, issues of prospective use after construction were not ripe for decision by the court because, as will be shown *infra*, the evidence showed that the use of the Center after construction might not be exclusively public.

■■ The burden of proving entitlement to the exemption rested with appellants, and we can find no error in the circuit court's holding that they failed to sustain the burden. Evidence was required that the Center was being used exclusively for

public purposes on January 1, 1989. Under the tax exemption statutes, the burden on the party claiming the exemption is to prove entitlement beyond a reasonable doubt. *See Ragland* v. *Dumas*, 292 Ark. 515, 732 S.W.2d 118 (1987). We cannot accept any lesser standard for a tax exemption case arising under the Constitution. The evidence before us, including the statement of the executive director of the Center, indicates that fees would be charged for use of the facilities, which may be rented by private individuals, and that, in some instances, events at the Center could be closed to the public at large. The stipulated facts indicate the Center may be used for non-public purposes. Such anticipated private use, regardless of any fee arrangements, could prevent property from being used exclusively for public purposes, which is the constitutional standard. *Holiday Island Suburban Improvement Dist. #1* v. *Williams*, 295 Ark. 442, 749 S.W.2d 314 (1988).

■ In a prior case this Court affirmed the denial of a tax exemption to property of the City of Fayetteville which was leased to the University for its use and for use by the general public, because the facilities were being rented to private organizations for substantial amounts and in competition with local hotels. *Off-Street Parking Development Dist. No. 1* v. *City of Fayetteville, supra.* Quoting language from *Hilger* v. *Harding College, supra,* that decision denied exemption where occasional use was for non-public purposes. In this case, in addition to the use by private groups, there is some evidence, as presented by the statement of the director of the Arts Center of the Ozarks located in Fayetteville, that the Walton Arts Center would be appealing to the same elements of the general public as that private organization, which does not have tax exempt facilities. Consequently, there was evidence before the circuit court which cast at least a reasonable doubt on the actual use of the Center when completed, causing the appellants to fail to sustain their burden of proof regarding the use requirement as of January 1, 1989.

■ In reference to the circuit court's holding that a tax exemption for public property under construction may be summarily denied based on the taxing authority's belief that the property might be used for a non-public purpose when completed, we disagree. The public entity seeking an exemption should be permitted appropriate opportunity to establish by proof its claim

of exemption under the standard herein enunciated, otherwise all public property under construction might be subject to taxation based on some perceived chance of a non-public benefit or use. In none of the many cases decided under article 16, § 5(b), is there reference to a standard based on speculation of use by the taxing authority. While this was not reversible error, we must modify the circuit court's decision in this respect, believing that each case should be judged on its own facts.

In conformity with our holdings on direct appeal, we affirm on the cross-appeal by appellees. If the public property in question had been used in the past for a public purpose, or the applicants for exemption had satisfactorily substantiated an intended exclusive public use, an exemption from taxation would be appropriate. *Hudgins* v. *City of Hot Springs, supra; Yoes* v. *City of Fort Smith*, 207 Ark. 694, 182 S.W.2d 683 (1944); and *Forsee* v. *Bd. of Directors of Bergman Special School Dist., supra.*

Affirmed as modified.

Special Justice HAMILTON SINGLETON joins in this opinion.

NEWBERN and BROWN, JJ., not participating.